1
2
3
4
5
6               IN THE UNITED STATES DISTRICT COURT

7                   FOR THE DISTRICT OF ARIZONA

8
9    Neil Rusty Bond,                          No. CV-19-04933-PHX-JAT

10                  Plaintiff,                  **ORDER**

11   v.

12   Commissioner    of    Social    Security
     Administration,
13
14                  Defendant.

15          Pending before the Court is the Motion to Dismiss (Doc. 24) for lack of subject

16   matter jurisdiction filed by Defendant Commissioner of Social Security Administration

17   ("Commissioner"). The Motion (Doc. 24) has been fully briefed.[1] (Doc. 24; Doc. 34;

18   Doc. 36). The Court now rules.

19   **I.      BACKGROUND**

20          Plaintiff Neil Rusty Bond ("Plaintiff") collected disability insurance benefits from

21   1991 to 1999. (Doc. 9 at 2; Doc. 34 at 2). The Commissioner asserts that the Social Security

22   Administration ("Administration") "determined that Plaintiff had been engaged in

23   substantial and gainful work activity and his benefits should have been suspended effective

24

25   [1] Plaintiff Neil Rusty Bond also filed a surreply (Doc. 38). Surreplies are not permitted in
     the District of Arizona without the court's approval. *Spina v. Maricopa Cty. Dep't of*
26   *Transp.*, No. CV05-0712-PHX-SMM, 2009 WL 890997, at *1 (D. Ariz. Apr. 1, 2009).
     Although the Court will not consider the Surreply (Doc. 38), the Court nonetheless
27   reviewed it, and consideration of the arguments contained therein would not affect the
     outcome.
28

August 1996 and terminated effective May 1999." (Doc. 24 at 3 (citing Doc. 1-1[2] at 14–18)). Plaintiff was convicted of theft of government property and of Social Security fraud. (*Id.* (citing Doc. 1-1 at 8–11; Doc. 9 at 2, 11)). The court ordered Plaintiff to pay restitution in the amount of $88,800.70. (Doc. 9 at 2; Doc. 24 at 3). Plaintiff eventually prevailed on collateral review, and the court resentenced Plaintiff and ordered him to pay the reduced amount of $30,929.16 in restitution. (Doc. 1-1 at 9; *see also* Doc. 9 at 4 (stating, inaccurately, that the restitution award was reduced to $30,926.16)).

In the meantime, on May 19, 2003, the Administration sent a notice to Plaintiff that he was liable for overpayment in the amount of $67,494.70 and that future benefits would be withheld to collect that amount. (Doc. 1-1 at 15; Doc. 9 at 2, 20). According to Plaintiff, on June 1, 2003, he sent a letter to the Administration, in which Plaintiff stated: "I was not overpaid these benefits according to the Social Security guidelines. Please send me a request for reconsideration and a request for waiver form. I would like to have a hearing with Social Security to present my net income as soon as possible. Thank you, Neil Bond." (Doc. 1-1 at 20; *see also* Doc. 9 at 11). Plaintiff alleges, and the record indicates, that the Administration never responded. (Doc. 9 at 10–11; *see* Doc. 36-1 at 4).

Plaintiff filed for Title II retirement insurance benefits in November 2015. (Doc. 24 at 3; Doc. 24-1 at 4). In December 2015, the Administration informed Plaintiff that he was entitled to monthly retirement benefits of $1027 as of June 2015 (save for his first check which appears to have been prorated), but that his benefits were subject to withholding to recover $67,119.70[3] in overpayments. (Doc. 24 at 3; Doc. 24-1 at 11; *see* Doc. 9 at 4). The Administration has been collecting the full amount of benefits each month since that time. (Doc. 24-1 at 11; *see* Doc. 9 at 4).

---

[2] As the Commissioner notes, it appears Plaintiff accidently failed to attach the exhibits he attached to the original Complaint (Doc. 1). (Doc. 24 at 2 n.2). Because the Amended Complaint's references to exhibits corresponds with the exhibits attached to the original Complaint (Doc. 1), the Court assumes Plaintiff incorporated those exhibits into the Amended Complaint (Doc. 9) consistent with the Court's duty to liberally construe a pro se plaintiff's pleadings. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

[3] This number is lower than the original $67,494.70 discussed above as the Administration had already collected some of the overpayment amount. (*See* Doc. 24-1 at 32).

Plaintiff sought reconsideration, particularly that the overpayment amount should be lowered. (Doc. 24 at 3–4; Doc. 24-1 at 14; *see* Doc. 9 at 4). Plaintiff asserted that the restitution amount of $30,929.16 is what he owes the Administration in overpayments and that the Administration should only recoup that amount. (Doc. 24-1 at 14; *see* Doc. 9 at 4). The Administration denied the request for reconsideration, stating that "any protest regarding the fact or amount of the overpayment has been previously addressed." (Doc. 24-1 at 32; *see* Doc. 9 at 11–12; Doc. 24 at 4). Plaintiff then sought a hearing before an administrative law judge ("ALJ"), which the ALJ denied. (Doc. 24 at 4; Doc. 24-1 at 34–39). In denying the hearing, it appears that the ALJ adopted the rationale from the Administration's reconsideration determination as the ALJ concluded, "[t]he overpayment amount has been previously addressed and the claimant is not entitled to any additional appeal rights in this regard." (Doc. 24-1 at 38–39; *see* Doc. 24 at 4–5). Plaintiff appealed the ALJ's decision to the Appeals Council, and Plaintiff indicated that he "was never granted a hearing by Social Security from 2003 through 2005." (Doc. 24-1 at 42). The Appeals Council denied Plaintiff's appeal of the ALJ's decision. (Doc. 24-1 at 55–56; Doc. 24 at 5).

However, the Commissioner notes that the Appeals Council recently recognized in February 2020, after the Commissioner's Motion to Dismiss (Doc. 24) was filed, that Plaintiff "did not receive a reconsideration determination in regard to the original overpayment notice of May 19, 2003" and that the May 2003 "notice, informing [Plaintiff] that [Plaintiff was] overpaid $67,494.70 in disability benefits, did not provide detailed computations regarding the overpayment fact and amount, the issues of trial work period and extended period of eligibility, the month of cessation, or the month of termination." (Doc. 36-1 at 4; Doc. 36 at 2). The Appeals Council nonetheless concurred with the ALJ's assessment that the "only appealable issue in [Plaintiff]'s December 9, 2015 notice of award of monthly retirement benefits was whether the benefits should be withheld to recoup an outstanding overpayment balance of $67,119.70." (*Id.*). The Appeals Council proposed that Plaintiff "dismiss [his] September 13, 2016 request for hearing for a different

reason than the one cited by the Administrative Law Judge, and return [the] case to [the] local social security office for a detailed reconsideration determination relative to the overpayment notice of May 19, 2003." (*Id.*).

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by [the] Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Consequently, a defendant may seek dismissal under Federal Rule of Civil Procedure 12(b)(1), at any time, to challenge whether a federal court has jurisdiction to hear the subject matter of a case. *See* Fed. R. Civ. P. 12(b)(1), (h)(3). "[W]hen subject matter jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008). Nonetheless, where a plaintiff is proceeding pro se, the court must construe the allegations in the complaint liberally. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## III.   ANALYSIS

The Commissioner argues the Court must dismiss this case because it lacks subject matter jurisdiction. (Doc. 24). Specifically, the Commissioner asserts that the Court only has jurisdiction to hear a challenge to a final decision made by the Commissioner and that Plaintiff's Amended Complaint (Doc. 9) does not properly assert a challenge to any final decision made by the Commissioner. (Doc. 24 at 2–3).

This Court has jurisdiction under 42 U.S.C. § 405(g) to review a decision made by the Commissioner. That section provides:

> Any individual, *after any final decision of the Commissioner of Social Security made after a hearing* to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g) (emphasis added). Thus, in the Social Security context, judicial review only extends to "final decision[s] . . . made after a hearing." *Id.* § 405(g)–(h); *see Smith v. Berryhill*, 139 S. Ct. 1765, 1773–74 (2019).

Congress did not define the term "final decision . . . made after a hearing." *See* 42 U.S.C. § 405(g). But, it has become axiomatic that Congress intended for the Commissioner to promulgate regulations to define the procedures that result in a final decision. *See, e.g.*, *Smith*, 139 S. Ct. at 1777. A decision is final after a four-step process. 20 C.F.R. § 404.900(a)(1)–(5). The steps are as follows: (1) initial determination, (2) request for reconsideration of the initial determination, (3) request for hearing before an ALJ, and (4) review of the request for hearing before the Appeals Council. *Id.* Thus, the Commissioner has made a reviewable "final decision" when steps one through four are completed. *Id.* § 404.900(a)(5).

At first blush, it seems simple that judicial review only extends to decisions made by the Commissioner where the claimant has exhausted her administrative remedies through the four-step process. In other words, the general rule is that there cannot be judicial review unless the claimant properly exhausted her administrative remedies because, without exhaustion, there is no final decision for the court to review. *See Califano v. Sanders*, 430 U.S. 99, 103 n.3, 108 (1977). However, a court can excuse a failure to exhaust as the exhaustion requirement is not jurisdictional. *Smith*, 139 S. Ct. at 1774.

It is clear based on the record and the Amended Complaint (Doc. 9) that Plaintiff sought relief as to the overpayment amount. (Doc. 24-1 at 38–39). An overpayment determination can be a final decision, made after hearing, that is subject to judicial review if the claimant properly exhausts her administration remedies.[4] *See McCarthy v. Apfel*, 221 F.3d 1119, 1123–24 (9th Cir. 2000); 20 C.F.R. § 404.900(a)(1) (stating "[i]nitial determination" includes "a determination we make about your entitlement or your

---

[4] The Court is perplexed by the Commissioner's assertion that "Plaintiff cannot use the reconsideration and hearing request processes as a vehicle to appeal the overpayment amount." (Doc. 24 at 8). An overpayment determination, including the calculation of the amount owed, can result in a final decision that is appealable. *See, e.g.*, *McCarthy v. Apfel*, 221 F.3d 1119, 1123–24 (9th Cir. 2000).

continuing entitlement to benefits or about any other matter, as discussed in [20 C.F.R.] § 404.902, that gives you a right to further review"); *id.* § 404.902(j), (k) (providing initial determinations that are subject to judicial review include determinations about "[a]ny overpayment or underpayment of your benefits" and "[w]hether an overpayment of benefits must be repaid to us"). The Commissioner's determination of a particular overpayment amount must be supported by substantial evidence. *McCarthy*, 221 F.3d at 1124.

The typical overpayment decision starts with an ex parte determination that an overpayment has been made, notification of that determination to the recipient, and shifting of the burden to the recipient to "(i) seek[] reconsideration to contest the accuracy of that determination[] or (ii) ask[] the [Commissioner] to forgive the debt and waive recovery." *Califano v. Yamasaki*, 442 U.S. 682, 686–87 (1979). If the claimant seeks reconsideration or waiver, the Administration's long-standing practice has been to defer recoupment at least until the initial determination has been upheld on reconsideration. *See id.*; *Mattern v. Weinberger*, 519 F.2d 150, 154 (3d Cir. 1975), *vacated sub nom. Mathews v. Mattern*, 425 U.S. 987 (1976); Overpayment Appeal and Waiver Rights, 61 Fed. Reg. 56,126-01, 56,218 (Oct. 31, 1996) ("If the individual responds within 30 days after the date of the overpayment notice, SSA must take action to ensure that benefit payments are not interrupted."); Soc. Sec. Admin., *Form SSA-3105*, at 2 (2017), *discussed in* 61 Fed. Reg. at 56,128; Soc. Sec. Admin., *Program Operations Manual System (POMS)* § GN 02201.011 (2012) [hereinafter POMS] ("Stop recovery effective with the month the overpaid person: requests reconsideration or waiver; requests an explanation of the overpayment . . . ."); POMS, *supra*, § GN 02201.017 ("We must stop recovery efforts until we provide the overpaid person an explanation, and give him or her an opportunity to decide how to respond to the explanation.").[5] "If it is decided that the [Commissioner]'s

---

[5] The Court recognizes that the POMS is not binding on the Commissioner under Ninth Circuit law. The POMS can have persuasive value "to the extent it provides a persuasive interpretation of an ambiguous regulation," but it does not create any enforceable duties on either the reviewing court or the Commissioner. *See Carillo-Yeras v. Astrue*, 671 F.3d 731,

1    initial determination was in error, the amounts wrongfully recouped are repaid." *Yamasaki*,

2    442 U.S. at 686–87.

3           Here, the Administration issued its initial overpayment determination in May 2003.

4    Plaintiff alleges he sought reconsideration of the overpayment decision in a letter dated

5    June 1, 2003. (Doc. 9 at 6). The Administration never responded. (*Id.* at 2; *see also* Doc. 36-

6    1 at 4). It was not until February 2020 when the Appeals Council recognized the error.

7    (Doc. 36-1 at 4).

8           The key issue here is whether there is a final decision for the Court to review. The

9    Commissioner argues there is no final decision on review before this Court. (Doc. 24 at 6).

10   The Commissioner's logic is as follows: Plaintiff appealed the withholding notice he

11   received in December 2015 and that notice made no decision, and thus, it is not an

12   appealable final decision. (*Id.* at 8–9). The Commissioner further reasons that Plaintiff must

13   exhaust his administration remedies as to the May 2003 initial determination that notified

14   him of the allegedly erroneous overpayment amount before the exhaustion requirement can

15   be met and an appealable final decision rendered. (*See id.*; Doc. 36 at 3). In sum, there is

16   no final decision on review because, according to the Commissioner, the 2015 withholding

17   notice is not a final decision and the May 2003 initial determination on the overpayment

18   ─────────────────

19   735 (9th Cir. 2011); *Moore v. Apfel*, 216 F.3d 864, 868–69 (9th Cir. 2000). Even so, the
     administrative review process of an overpayment determination outlined by the POMS is
20   binding. First, the Administration has stated that the regulations it promulgated were
     intended to effectuate the procedures contained in the program instructions. *See* 61 Fed.
21   Reg. at 56,218. The Administration's internal guidelines have articulated for decades that
     the Administration must defer recoupment of overpayments where a claimant requests
22   reconsideration. *See Yamaski*, 442 U.S. at 686–87; *Mattern*, 519 F.2d at 154 & n.5. Further,
     "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their
23   own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974), *quoted in Alcaraz v. I.N.S.*,
     384 F.3d 1150, 1162 (9th Cir. 2004); *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).
24   The Court finds that, given the fact that an overpayment determination results in the
     withholding of benefits until the amount is paid in full, *see* 20 C.F.R. § 404.502(a), a
25   decision calculating the amount of overpayment is one that affects the rights of individuals,
     and thus, the Administration must adhere to its own guidance under *Ruiz*. Finally, the Court
26   views POMS, *supra*, §§ GN 02201.011, GN 02201.017 as persuasive interpretations of
     how the Administration must process an overpayment determination under 20 C.F.R.
27   § 404.502(a). *See Carillo-Yeras*, 671 F.3d at 735; *see also Yamaski*, 442 U.S. at 696 ("'The
     statute authorizes only 'proper' recoupment . . . .'" (quoting 42 U.S.C. § 405(a))). Therefore,
28   where a request for reconsideration of an overpayment determination is made, the Court
     finds that the Administration is bound by its long-standing practice of deferring
     recoupment until the overpayment determination is upheld.

amount is neither before this Court nor is it a final decision. However, the Court may excuse the need for a final decision here because Plaintiff presents a colorable due process claim under the Fifth Amendment.

The judicial review provision under 42 U.S.C. § 405(g) has two separate components. One component, that a plaintiff's claim must first be presented to the Administration, is jurisdictional. *Smith*, 139 S. Ct. at 1773. Plaintiff presented his claim to the Administration, so the jurisdictional requirement is satisfied. The second, that a plaintiff exhaust her administrative remedies before bringing the claim to the federal judiciary, is waivable by the Commissioner or excusable by a federal court, as noted above. *Id.* at 1773–74. The exhaustion requirement may be excused where the plaintiff's claim is: "(1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." *Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993).

Simply stated, the determination of whether a court should excuse the exhaustion requirement "is influenced by the existence in the controversy of a collateral colorable [c]onstitutional challenge that is unsuited to resolution in the relevant administrative form." *Klein v. Sullivan*, 978 F.2d 520, 524 (9th Cir. 1992) (excusing exhaustion requirement where requiring exhaustion "would not answer [the] constitutional challenge" (citation omitted)). A due process claim that alleges procedural errors is typically exempt from the exhaustion requirement. *See id.*; *see also Sanders*, 430 U.S. at 109; *Mathews v. Eldridge*, 424 U.S. 319, 330–31 (1976).

Plaintiff has articulated a colorable due process claim. The Supreme Court has made clear that a claimant does *not* have a right to a pre-recoupment hearing where the claimant seeks reconsideration of an overpayment determination. *Yamaski*, 442 U.S. at 695–97 (concluding that there is a right to pre-recoupment hearing where a claimant seeks waiver of the overpayment decision but not reconsideration). Nonetheless, as discussed above, the Administration has a long-standing practice of deferring recoupment until a claimant's

request for reconsideration is processed. *See supra* pp. 5–6 & note 5. Processing of a request for reconsideration includes a review of any written evidence the claimant sends in. *See, e.g.*, *Mattern v. Mathews*, 582 F.2d 248, 258 (3d Cir. 1978). Courts have noted that the Administration's long-standing practice of deferring recoupment until the documentary review is complete plus the opportunity for a post-recoupment hearing satisfies due process. *See, e.g.*, *Yamaski*, 442 U.S. at 686–87; *Mattern*, 582 F.2d at 258; *see also Yamaski*, 442 U.S. at 696 ("The statute authorizes only 'proper' recoupment . . . ." (quoting 42 U.S.C. § 404(a))). However, the Administration did not abide by those procedures here. It is unlikely that the Administration can withhold entitlements for recoupment under the Due Process Clause without any opportunity for review of an initial overpayment determination. As such, Plaintiff's Amended Complaint (Doc. 9), liberally construed, states a colorable constitutional claim as it asserts a right to be heard—even if by written submission only—prior to recoupment under the Due Process Clause. Therefore, the three-part test for excusing exhaustion has been met here.

       **a.**    **Collaterality**

First, Plaintiff's due process claim is collateral because it does not simply assert entitlement to benefits but rather Plaintiff alleges that the Administration violated his right to be heard, which resulted in wrongfully withheld benefits. *Johnson*, 2 F.3d at 921–22; *see Klein*, 978 F.2d at 523–24 ("However, $26,737.56 is no longer what appellants allege this case is all about. . . . [A]ppellants' complaint lays claim to numerous [c]onstitutional causes of action arising out of the Department's alleged mishandling of their claim for reimbursement."). The Court's decision as to Plaintiff's due process claim need not "interfere[] with agency process" because all that is required is that the Administration comply with its own procedures. *Johnson*, 2 F.3d at 922; *see supra* pp. 5–6 & note 5. Plaintiff's procedural challenge "rises and falls on its own" without reference to the overpayment amount. *Johnson*, 2 F.3d at 921–22. Plaintiff's due process claim is therefore collateral to the merits—the amount of overpayment he owes the Administration.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

###### b.  Irreparability

Plaintiff has alleged a colorable claim of irreparable injury. An injury is irreparable if it cannot be remedied "by retroactive payments at some later time." *Briggs v. Sullivan*, 886 F.2d 1132, 1140 (9th Cir. 1989). Plaintiff has gone about seventeen years without a reconsideration or adequate explanation of the overpayment amount that was articulated in the May 2003 initial determination. Nonetheless, the Administration, in violation of its own long-standing practice, began withholding Plaintiff's retirement benefits to recoup that overpayment amount.

At bottom, Plaintiff's due process claim is irreparable because it will not be remedied by simply awarding him the amount he is owed in back payments through the administrative appeal process. "[E]conomic hardship suffered by the plaintiffs while awaiting administrative review constitutes irreparable injury." *Johnson*, 2 F.3d at 922. "It is simply not true that a claimant for disability benefits, not infrequently in dire financial circumstances due to his disability, is truly made whole by retroactive payments which he has had to survive well over a year without." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983) (citation omitted).[6]

Withholding of Plaintiff's retirement benefits became effective as of June 2015, which is when Plaintiff became entitled to monthly retirement benefits. (Doc. 24-1 at 11). Each month, the entire amount Plaintiff is entitled to—$1027—is withheld. (*Id.*). That means approximately fifty-nine months of payments have been withheld for a total of about $60,000. If Plaintiff is correct that the true overpayment amount is $30,929.16, that means nearly $30,000 has been wrongfully withheld. Worse yet, if Plaintiff is correct, that means he has gone without benefits he is entitled to for about *twenty-nine* months. The Administration's proposal after it realized its failure to respond to Plaintiff's request for reconsideration was to recommend that Plaintiff seek reconsideration of the May 2003 initial determination now after withholding—in violation of the Administration's own

---

[6] The Court understands that Plaintiff is not seeking disability benefits. But, he does claim he is disabled, and thus, his disability could have affected his ability to work, putting him in the "dire financial circumstances" that *Lopez* discusses. (Doc. 9 at 2, 6, 11, 16).

procedures—approximately twenty-nine months of entitlements at $1027 a month to the tune of about $30,000.

It took nearly a year for the Administration to review Plaintiff's claim after he received the December 2015 withholding notice and promptly sought reconsideration. (Doc. 24-1 at 32–33). Therefore, Plaintiff may go approximately another twelve months without the benefits he is entitled to. If the reconsideration goes against Plaintiff, it could take years before an ALJ hears his appeal. In fact, it took four years from the time Plaintiff sought reconsideration for the ALJ to decide Plaintiff's first appeal. (Doc. 24-1 at 38–39). All told, if Plaintiff is correct about the overpayment amount, it could be years before he finally gets relief for something that should have never happened in the first place. The Court underscores the fact that it was the *Administration's* errors that have caused this issue to not be dealt with in a timely manner.

It is true that administrative delay in managing a national administrative scheme is expected and even necessary at times. *See Machado v. Leavitt*, 542 F. Supp. 2d 185, 195 (D. Mass. 2008). But, "delay without justification clearly falls outside of constitutional bounds." *Id.* (citing *Kraebel v. N.Y. City Dep't of Hous. Preservation & Dev.*, 959 F.2d 395, 405 (2d Cir. 1992) ("[D]elay in processing can become so unreasonable as to deny due process.")); *Kelly v. R.R. Ret. Bd.*, 625 F.2d 486, 490–91 (3d Cir. 1980) (stating delay of "nearly four years[] is wholly inexcusable" and "totally out of phase with the requirements of fairness"); *Parker v. R.R. Ret. Bd.*, 441 F.2d 460, 464 (7th Cir. 1971) ("The application has been pending now for over six years and we see no reason to remand the case for the taking of further testimony."). An individual only retires once, and the Administration has impaired years of Plaintiff's retirement through the uncertainty it created as a result of its errors. *Strobel v. Morgan Stanley Dean Witter*, No. 04CV1069BEN(BLM), 2007 WL 1238709, at *3 (S.D. Cal. Apr. 24, 2007); *see also Machado*, 542 F. Supp. 2d at 189 ("Plaintiffs have undisputedly endured months of futile, and no doubt maddening, attempts to remedy improper withholdings—contacting the [Administration], CMS, and their plan providers on numerous occasions only to be met

with disclaimers of responsibility or false reassurances that the problem would soon be corrected."). Plaintiff is not only entitled to retirement benefits, but he also claims he is disabled. (Doc. 9 at 2, 6, 11, 16). "Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required. It would be tragic, not only from the standpoint of the individuals involved but also from the standpoint of society, were poor, elderly, disabled people to be wrongfully deprived of essential benefits for *any period of time*." *Lopez*, 713 F.2d at 1437 (emphasis added).

By contrast, the Administration offers no justification for its five-year delay (or seventeen-year delay if the clock began ticking when Plaintiff originally sought reconsideration). In fact, the Administration has offered no excuse for the delay here. *See Machado*, 542 F. Supp. 2d at 195–97 (finding that plaintiffs articulated a colorable due process claim where justification for administrative delay of "well over a year" was unclear given that delay appeared to have been caused by a failure to perform "relatively straightforward" corrections). To delay further would continue to work and exacerbate a manifest injustice against Plaintiff, especially considering that the Administration was not to begin recouping payments until it provided a detailed explanation and computation in response to Plaintiff's request for reconsideration of the overpayment amount. *See supra* pp. 5–6 & note 5. There is irreparable harm here.

c.     **Futility**

Finally, exhaustion will not cure the alleged due process violation rendering exhaustion futile. "Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions." *Sanders*, 430 U.S. at 109. It is a "well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed." *Id.* Again, it has been years without the appropriate reconsideration. Indeed, Plaintiff has already gone through the administrative appeals process once to no avail. The Administration's errors caused the Administration to fail to properly deal with Plaintiff's claim. The Administration has still not eliminated uncertainty as to whether Plaintiff will

1   actually receive the proper reconsideration. Should the Court dismiss this case for failure
2   to exhaust, Plaintiff may end up in the same place, just years later.

3          The Commissioner is correct that the determination as to the overpayment amount
4   is properly entrusted to the Administration for reconsideration in the first instance. (Doc. 36
5   at 3). But, this case has gone far beyond that simple issue. Neither the Administration's
6   expertise nor compiling of a detailed factual record is necessary to resolving Plaintiff's due
7   process claim. *Briggs*, 886 F.2d at 1140. There is simply no need for administrative review
8   of Plaintiff's allegations that the Administration violated its own procedures by
9   withholding benefits despite failing to respond to Plaintiff's request for reconsideration. In
10  short, exhaustion will "not answer [Plaintiff's] constitutional challenge." *Klein*, 978 F.2d
11  at 524 (citation omitted).

12          **d.      Conclusion**

13          To the extent Plaintiff failed to exhaust his administrative remedies as to the May
14  2003 overpayment determination, the Court excuses such failure, as Plaintiff has
15  articulated a colorable due process violation. In short, it is time to ensure that this case will
16  be resolved without further unnecessary delay. *See Klein*, 978 F.2d at 524. Accordingly,
17  the Court will deny the Motion to Dismiss (Doc. 24).

18          The Court is disheartened by the Administration's treatment of this case. The
19  Commissioner could have simply requested that the Court remand this case for
20  reconsideration after he recognized the errors that occurred here. Instead, after the Appeals
21  Council revealed the errors that occurred in this case, (Doc. 36-1), the Commissioner
22  doubled-down on his original argument that the Court lacked subject matter jurisdiction
23  and essentially asked Plaintiff to trust that the Administration will get it right this time,
24  seventeen years after his original request for reconsideration and nearly five since the
25  Administration began withholding Plaintiff's benefits in violation of the Administration's
26  own procedures.

27          The Commissioner's position is not in accord with the fact that the Social Security
28  Act "as a whole is one that Congress designed to be unusually protective of claimants."

*See Smith*, 139 S. Ct. at 1776 (internal quotation marks and citation omitted). The Commissioner's rather flippant suggestion that the Court should dismiss Plaintiff's case despite the compounded errors that span nearly seventeen years and that have cost Plaintiff potentially $30,000 in wrongfully withheld entitlements and undoubtedly countless hours of frustration simply does not square with the fact that Congress did not "intend[] for this claimant-protective statute, to leave a claimant without recourse to the courts when such a mistake does occur—least of all when the claimant may have already expended a significant amount of likely limited resources in a lengthy proceeding." *Id.* (citation omitted). In any event, because Plaintiff has articulated a colorable due process claim, the Court will deny the Motion to Dismiss (Doc. 24).

## IV.    PLAINTIFF'S MOTION FOR AN EVIDENTIARY HEARING

Also pending before the Court is Plaintiff's Motion for an Evidentiary Hearing (Doc. 33). That Motion (Doc. 33) will be denied as there is no need for an evidentiary hearing at this time.

## V.    CONCLUSION

The Court will deny the Motion to Dismiss (Doc. 24). It seems that a sentence six remand pursuant to 42 U.S.C. § 405(g)[7] may be appropriate given the errors that the Commissioner has brought to the Court's attention. *See Seaborn v. Sullivan*, 822 F. Supp.

---

[7] Sentence six of 42 U.S.C. § 405(g) provides:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g).

121, 124–25 (S.D.N.Y. 1993). The Commissioner shall file a brief as to the propriety of a sentence six remand by **Wednesday, June 3, 2020**. Plaintiff may respond within one week of that briefing deadline. There shall be no reply brief.

Accordingly,

**IT IS ORDERED** that the Commissioner's Motion to Dismiss (Doc. 24) is **DENIED**.

**IT IS FURTHER ORDERED** that the Commissioner shall file a brief, not to exceed ten pages, on the propriety of a sentence six remand pursuant to 42 U.S.C. § 405(g) by **Wednesday, June 3, 2020**.

**IT IS FURTHER ORDERED** that Plaintiff may file a response brief, not to exceed ten pages, on the propriety of a sentence six remand pursuant to 42 U.S.C. § 405(g) by **Wednesday, June 10, 2020**.

**IT IS FURTHER ORDERED** that Plaintiff Neil Rusty Bond's Motion for an Evidentiary Hearing (Doc. 33) is **DENIED**.

Dated this 20th day of May, 2020.

James A. Teilborg
Senior United States District Judge